## Albert B. Sumner and Charles P. Sumner, Adm'rs, etc., v. The Elgin Condensed Milk Co.

1. TRIALS—*By the Court — Conclusive, When.*—Where the judge before whom a case is tried has ample opportunity to investigate the questions of fact which arise, the case appears to have been fairly tried, and there is evidence to support the finding and judgment, the Appellate Court will not be disposed to disturb it.

Assumpsit, for goods sold, etc. Appeal from the Circuit Court of Kane County; the Hon. HENRY B. WILLIS, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 1, 1900.

JOHN A. RUSSELL, attorney for appellants; SAMUEL ALSCHULER, of counsel.

BOTSFORD, WAYNE & BOTSFORD, attorneys for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was a suit in assumpsit, brought by W. P. Sumner against appellee to recover a balance of $798.01 claimed to be due him from the latter.

The declaration contained the common counts and two special counts. One of the special counts charged that Sumner bought from appellee certain condensed milk, which was warranted to be sound and merchantable, but proved to be damaged and unmerchantable, whereby he lost the benefit of selling the same. The other charged that appellee guaranteed said milk to be sound and merchantable and agreed that in case the same should prove otherwise that Sumner should have the right to return the same and receive credit at the price paid therefor, with freight charges added; that the milk proved to be unsound and unmerchantable and was returned to appellee, who thereupon became liable to pay the price of said milk, together with freight charges. Appellee filed the general issue and a plea of set-off. A jury was waived and a trial had before the court. After the cause was heard, but before judgment

was entered, W. P. Sumner died, and the administrators of his estate were substituted as parties in his place. The court found for appellee and entered a judgment in its favor against appellants for $850.

The proof showed that in 1889 W. P. Sumner, being then engaged in the milk and butter business at Jacksonville, Florida, entered into an agreement with appellee to handle its condensed milk. He was to pay the current rate of prices for the various brands of milk, but was to receive a brokerage of two per cent for handling the same. Appellee guaranteed that all milk shipped to Sumner should be sound and merchantable, and agreed that the latter should have the right to return damaged goods and receive credit therefor at the rate the same were charged to him, with freight charges added. Sumner was instructed to guarantee the milk to his customers. Under this arrangement appellee shipped milk to Sumner from time to time, as ordered by him, until March 24, 1893, when the last carload was forwarded to him. This carload was shipped upon the receipt of an order from Sumner and amounted in value to $1,575. From the time he commenced handling the goods Sumner had returned such goods as he found to be unsound, and received credit for them in accordance with the agreement. Previous to the shipment of the last carload, however, the percentage of the cans returned by him was comparatively small.

On April 15, 1893, a settlement was had between Sumner and appellee and the former paid by check $1,494.52, in full of the amount due from him to appellee at that time. This settlement, however, did not include the amount due for any goods shipped Sumner after February 7, 1893, as the credit upon which they were sold had not then expired. On May 30, 1893, appellee drew on Sumner for $1,500 on account of the last carload shipped him, and he returned the draft unpaid. At the same time he complained of the milk which had been sent to him, but said, "I will send you some funds on it very soon." A few days later he again wrote, stating he was trying to reduce the stock as much as possible before sending the balance back, and would send

" some funds in a few days."   He failed, however, to send any money, but returned milk from time to time, the last lot having been returned in September, 1893.  Sumner claimed certain credits in his favor, which, including the last carload of milk returned, would have overpaid his account to appellee to the amount of $798.01, for which sum suit was brought.

On the other hand appellee claimed that a large portion of the milk returned was rejected by Sumner without reason, and that he was not entitled to credit for the same. There is no question of law presented by the record or argued by counsel for the decision of this court, the only question being one of fact.  The proof shows that some of the goods returned by Sumner were several years old, some had labels off and could not be identified as goods belonging to appellee, some were cans from which the contents had been removed, while some had labels of other companies upon them.

It does not appear, satisfactorily, from the testimony and letters of Sumner himself, that he knew that all the goods returned were unsound, and some of them were in fact afterward sold to other parties by appellee.  It appeared from the evidence that condensed milk would not keep for an unlimited time in a warm climate, and we do not think that the privilege of returning goods given to Sumner was intended to include all goods sold to him, regardless of the length of time they had been in his possession or in the possession of his customers.  Sumner was therefore not entitled to credit for those cans whose identity as to time of manufacture had been destroyed, by loss of label or otherwise, or for such milk as he neglected to return within a reasonable length of time.

The judge before whom this case was tried in the court below had ample opportunity to investigate the question of fact which arose, and as the case appears to have been fairly tried, and there is evidence to support the finding and judgment, we are not disposed to disturb the same.  The judgment of the court below will accordingly be affirmed.